IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YURI SIRKO, | : | |
|     *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AETNA LIFE INS. CO., | : | No. 15-21 |
|     *Defendant*. | : | |

**M E M O R A N D U M**

PRATTER, J.                                                                                            FEBRUARY 2, 2016

After suffering from back and shoulder impairments and receiving both short term and temporary long term occupational disability payments, Yuri Sirko filed this ERISA suit to challenge Aetna's denial of his long term total disability benefits. The parties have filed cross motions for summary judgment based on the administrative record. After reviewing the motions and the administrative record, the Court will grant Aetna's motion and deny Mr. Sirko's motion.

**BACKGROUND**

Mr. Sirko was employed by Federal Express ("FedEx") as a Ramp Transport Driver, a job which required considerable physical exertion. As a FedEx employee, Mr. Sirko was a participant in FedEx's short and long term disability plans. FedEx is the administrator of the Long Term Disability Plan (the "Plan"), and Aetna is the Claims Paying Administrator. Aetna determines eligibility for benefits and reviews benefit denials, and the Plan grants Aetna discretionary authority to interpret the Plan's provisions relating to eligibility.

    **I.**    **Mr. Sirko's Medical History**

Mr. Sirko has a long history of back troubles, for which he sought disability benefits in 2011. He has been diagnosed with spinal stenosis, multi-level lumbar degenerative disk disease,

1

and lumbar spine facet syndrome, and he suffers from back and shoulder pain.  He has undergone surgery, including a spinal fusion in 2012 and shoulder surgery in 2013; physical therapy; and epidural injections, among other treatments, to remedy these conditions.  His range of motion is listed at varying levels of impairment throughout his medical records.  Records from physical therapy sessions in 2013 state that Mr. Sirko showed some improvement in his tolerance for walking and lifting/carrying over time, even reporting walking 6-7 blocks before the onset of pain, lifting 15-35 pounds on occasion, and performing at "a relatively high functional level despite [his] symptoms ([i.e.,] standing at a museum for several hours, bending to install grout in his bathroom)."  Administrative Record, Docket No. 18 (hereinafter "AR"), at 86, 92, 96, 99.

However, one of Mr. Sirko's treating physicians, Dr. Balderston, noted in a March 7, 2014 progress note that Mr. Sirko is "disabled from performing a full day of work."  *Id.*, at 126.  Then, on June 17, 2014, after Mr. Sirko's benefits had been denied for the first time, Dr. Balderston stated in his progress notes that Mr. Sirko had a restricted range of motion, did not receive relief from an epidural injection, and "certainly can not [sic] work a 25-hour workweek under any circumstances."  *Id.*, at 127.

Mr. Sirko was also examined by Dr. DiStefano on September 23, 2014.  Dr. DiStefano observed that Mr. Sirko had difficulty standing up from a seated position and that he walked slowly with a shuffling gait.  He recorded Mr. Sirko's complaints that he can work for only 4-5 hours at a time before lying down, that sitting is particularly difficult, and that injections did not help.  After a physical examination, he concluded that Mr. Sirko's symptoms may be due to perineural fibrosis, which is the formation of scar tissue surrounding nerve roots and is difficult to treat.  Dr. DiStefano gave Mr. Sirko a prognosis of "poor for full recovery."  *Id.* at 19-21.

2

## II.     Mr. Sirko's Applications for Benefits

In November, 2011, Mr. Sirko applied for short term disability benefits under FedEx's Short Term Disability Plan, citing back and shoulder conditions that prevented him from performing his job. His application was granted, and he received six months of benefits under the plan from November 28, 2011 through May 28, 2012.

When those short term benefits expired, because he was still unable to perform his job as a Ramp Transport Driver, Mr. Sirko became eligible for long term disability benefits for an "Occupational Disability"[1] under the Plan. He began receiving those benefits when his short term disability benefits ceased. The Plan only allows for two years of Occupational Disability benefits, however. In order to receive disability benefits for longer than a two-year period, an employee must be "Totally Disabled," as defined by the Plan. "Total Disability" means:

> [T]he complete inability of a Covered Employee, because of a medically-determinable physical or functional impairment mental or (other than an impairment caused by a nervous condition or a Chemical Dependency), to engage in *any* compensable employment for twenty-five hours per week.

AR, at 421 (emphasis added). Under the Plan, a disability must be "substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms." *Id.* at 413-14. "[P]ain alone is not proof of disability" under the Plan. *Id.* at 345.

---

[1] The Plan defines an "Occupational Disability" as "the inability of a Covered Employee, because of a medically-determinable physical or functional impairment or a medically-determinable Mental Impairment (other than an impairment caused by a Chemical Dependency), to perform the duties of his regular occupation. Occupational Disability shall include a natural physical deterioration which impairs a Covered Employee's ability in connection with his duties in the operation or maintenance of an aircraft, vehicle or any other such equipment requiring licensing for its operation or maintenance and which results in the revocation of such license and denial of restoration thereof."  AR, at 417-48.

3

On April 17, 2014, Mr. Sirko's application for long term disability benefits was denied. Aetna relied on the opinion of non-examining orthopedic expert Dr. James Waldquist, who examined Mr. Sirko's medical records, to conclude that Mr. Sirko was not precluded from performing at least 25 hours of work on a weekly basis. Mr. Sirko appealed that decision, and Aetna again denied Mr. Sirko benefits, this time relying on the opinion of non-examining orthopedic surgeon Dr. Martin Mendelssohn. In both denials, Aetna cited a lack of significant objective findings supporting Mr. Sirko's claim.

Mr. Sirko then filed the instant lawsuit, alleging that Aetna's decision to deny benefits was arbitrary and capricious. The parties filed cross-motions for summary judgment.

**LEGAL STANDARD**

The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions. *Se. Pa. Transit Auth. v. Pa. Pub. Util. Comm'n*, 826 F. Supp. 1506, 1512 (E.D. Pa. 1993). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id*.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "'showing' – that is,

4

pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

**DISCUSSION**

Mr. Sirko asks the Court to award him benefits under § 502(a)(1)(B) of ERISA.[2] Under § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a) (1)(B). The parties agree that the deferential abuse-of-discretion standard of review is appropriate in this case. *See Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105 (2008). "Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of the Plan administrator only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir. 1993) (quoting *Adamo v. Anchor Hocking Corp.,* 720 F.Supp. 491, 500 (W.D. Pa. 1989)). "An administrator's interpretation is not arbitrary if it is 'reasonably consistent with unambiguous plan language.'" *Fleisher v. Standard Ins. Co.,* 679 F.3d 116, 121 (3d Cir. 2012) (quoting *Bill Gray Enters. v. Gourley,* 248 F.3d 206, 218 (3d Cir. 2001)). "When a plan's language is ambiguous and the administrator is authorized to interpret it, courts 'must defer to this interpretation unless it is arbitrary or capricious.'" *Id.*

---

[2] Actually, Mr. Sirko does not identify explicitly under which provision of ERISA he brings his suit. Based on his allegations, the Court concludes that he is invoking § 502(a)(1)(B).

(quoting *McElroy v. SmithKline Beecham Health & Welfare Ben. Trust Plan,* 340 F.3d 139, 143 (3d Cir. 2003)).

Mr. Sirko argues that Aetna's decision to deny him benefits was arbitrary and capricious because it failed to give "proper weight" to his treating physicians' opinions. He does not cite to any case law regarding what weight *should* be given to the opinions of treating physicians, nor does he explain in any specific way why Aetna's reliance on the opinions of two "hired physicians" was in error, aside from pointing out that they were non-examining doctors. Aetna, on the other hand, cites to precedential opinions holding that a plan administrator need not accord special deference to the opinion of treating physicians. *See, e.g., Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) (holding that unlike in Social Security cases, ERISA plan administrators need not accord special deference to treating physician or meet a heightened burden of explanation when rejecting a treating physician's opinion). Given the thorough review of medical records that each of the two non-examining physicians conducted and the conflicting information about Mr. Sirko's functional capacity found in those records, the Court cannot say that Aetna acted arbitrarily or capriciously in crediting the opinions of those non-examining experts. *See Brandenburg v. Corning, Inc. Pension Plan for Hourly Employees*, 243 F. App'x. 671, 673 (3d Cir. 2007) (holding that a plan administrator's decision was not arbitrary or capricious when it denied benefits based on an independent medical assessment rather than crediting a treating physician's statement that the plaintiff was unable to work); *Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 258 (3d Cir. 2004) (holding that in the ERISA context, "[a] professional disagreement does not amount to an arbitrary refusal to credit").

Mr. Sirko also argues that Aetna ignored his "continued inability to perform the material duties of his occupation." In so arguing, Mr. Sirko does not engage with the actual Plan definitions of disability and total disability. The Plan requires that a determination of disability be based on "significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms." AR, at 413-14. Mr. Sirko appears to focus on his symptoms, like pain and self-reported limitations in stamina, rather than identifying objective findings and explaining how those findings are tied to his functional capacity. Moreover, Mr. Sirko's argument that Aetna ignored his "continued inability to perform the material duties of his occupation" wholly ignores the clear language of the Plan's definition of "Total Disability" as not being tied to the ability to perform an employee's former occupation but to the ability to perform *any* compensable employment for at least 25 hours a week. As the medical records in this case show, Mr. Sirko himself reported that he could sit for 4-5 hours at a time, which corresponds very closely to a 25-hour workweek at a sedentary job. While the Court sympathizes with Mr. Sirko's ongoing health struggles, nothing in the record suggests that Aetna denied him benefits arbitrarily or capriciously.

## CONCLUSION

For the foregoing reasons, the Court will deny Mr. Sirko's motion for summary judgment and grant Aetna's. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge